JOHN THAMS, APPELLANT, V. GEORGE H. SHARP ET AL., APPELLEES.

49  237
62  646

FILED OCTOBER 6, 1896.   No. 6689.

1. Evidence: DEEDS: TRANSCRIPT OF RECORD.   A certified transcript of the record of a deed duly recorded may be read in evidence with like force and effect of the original deed, whenever the original is shown to be lost or not belonging to the party seeking to use it, nor within his control.   (Compiled Statutes, ch. 73, sec. 13.)

2. Deeds: EVIDENCE OF FORGERY.   Evidence in the case considered, and *held* sufficient to sustain the finding of the trial court that the deed purporting to have been made by P. T. to J. R. A. was genuine and not a forgery.

APPEAL from the district court of Knox county.   Heard below before JACKSON, J.

*Simpson & Sornborger*, for appellant.

References as to competency of certified copy of record of deed: 1 Wharton, Evidence [3d ed.], sec. 141; *Edwards v. Noyes*, 65 N. Y., 125; *Krise v. Nelson*, 66 Pa. St., 258; *Potts v. Coleman*, 5 So. Rep. [Ala.], 782; *Loftin v. Loftin*, 1 S. E. Rep. [N. Car.], 837; *Allen v. Read*, 17 S. W. Rep. [Tex.], 115; *Overand v. Menczer*, 18 S. W. Rep. [Tex.], 301; *Dickinson v. Breeden*, 25 Ill., 168; Newell, Ejectment, 464; *Phillips v. Bishop*, 35 Neb., 487.

*C. C. McNish* and *A. R. Oleson*, contra.

NORVAL, J.

This action was instituted in the court below by John Thams against George H. Sharp and Andrew R. Graham to quiet title to the southwest quarter of section 20, township 29, range 2 west of the 6th P. M., and to cancel of record certain deeds covering the lands mentioned. The defendant Graham filed an answer and cross-petition, setting up therein title to the premises in himself and praying that the same may be quieted in him. Plaintiff replied by a general denial. There was a trial on the merits, which resulted in a decree for Graham, from which this appeal is taken, plaintiff claiming that the findings of the trial court are unsupported by the evidence.

A patent was issued for the lands in dispute by the United States to one Peter Thams, of Clinton county, Iowa, on April 1, 1872, which patent was duly recorded. On July 29, 1891, the said Peter Thams, his wife joining with him, conveyed the lands by warranty deed, duly acknowledged, to his brother, the plaintiff herein, which deed was filed for record on August 17, 1891. The defendant Graham also claims to be the owner of the lands through certain conveyances, the following being his chain of title: A warranty deed purporting to have been made by Peter Thams, to one John R. Armstrong, of Elk-

hart, Indiana, acknowledged before I. N. Whittam, a no-
tary public, on May 6, 1872, recorded May 15, 1872;
warranty deed from the widow and heirs of John R.
Armstrong, deceased, to George H. Sharp, dated Septem-
ber 21, 1891, recorded September 26, 1891; quitclaim
deed from George H. Sharp and Winifred C., his. wife, to
Andrew R. Graham, bearing date September 25, 1891,
recorded May 17, 1892. It will be observed that each
party claims title through Peter Thams as the common
source. Plaintiff alleges and claims that the deed pur-
porting to have been executed by Peter Thams to Arm-
strong was forged. The decision in this case turns upon
the fact whether that deed is genuine or fictitious.

Peter Thams, plaintiff's grantor and the person who
acquired the title to the 160 acres from the United States,
testified positively that he never signed or acknowledged
the Armstrong deed and is not acquainted with the per-
son certifying to the acknowledgment; that he first
learned of its existence about two years prior to the trial;
that he never conveyed these lands to any person other
than John Thams, the plaintiff; that he paid the taxes on
the real estate for several years between 1872 and 1890,
and that he always spelled his surname "T-h-a-m-s," and
never with the letter "e" preceding the letter "s." The
above is the substance of the evidence upon which the
plaintiff relies in making out his case, with the exception
as to the way the grantor's name is spelled in the deed
to Armstrong, which will be presently stated. The record
shows that John R. Armstrong died at his home in Elk-
hart, Indiana, several years since. It was proven upon
the trial by the testimony of his widow and other mem-
bers of his family that his valuable papers at the time of
his death were kept at his home in a bureau drawer; that
subsequently on the removal of the family to another
state the contents of the bureau, including the said pa-
pers of the deceased, were dumped upon the floor, where
the papers were left, and that the controverted deed can-
not now be found, although diligent search therefor has

been made.    The deed was recorded in the deed records
of Knox county, and plaintiff introduced in evidence a
certified transcript of the record.    This shows that in the
body of the deed and in the certificate of acknowledg
ment, as well as the signature of the grantor, his surname
is spelled "T-h-a-m-e-s."    While the incorrect spelling of
the grantor's name thus indicated tends to corroborate
the testimony of Peter Thams, it is not necessarily con-
clusive upon the question whether the deed was forged.
(*Rogers v. Manley*, 49 N. W. Rep. [Minn.], 194.)    It is prob-
ably true that the testimony adduced by the plaintiff
would have warranted a finding and decree in his favor;
but that alone will not authorize a reversal.    It must
also appear that the decree was not supported by suffi-
cient evidence, which plaintiff insists that the record
shows.    As tending to establish that Peter Thams con-
veyed the lands to Armstrong, there is the record of such
conveyance, and in addition thereto the testimony by
deposition of I. N. Whittam, the notary public before
whom the acknowledgment of the conveyance purports
to have been taken, to the effect that Peter Thams, at and
prior to the date of the deed, resided in Cedar Rapids,
Iowa, the latter being engaged in the saloon business on
Second street, not far distant from witness' office; that
Thams went before Whittam and acknowledged the deed
in question, about twenty or twenty-one years prior to
the date of his testifying, and that he has a personal rec-
ollection of taking the acknowledgment and making the
deed.    It was shown beyond dispute that Peter Thams,
plaintiff's grantor, resided in Cedar Rapids at the date of
the disputed deed, and about that time Armstrong was
also in the same city, he and Peter Thams both stopping
at the same hotel, and the latter obtaining from Arm-
strong the right for the state of Wisconsin in a patent
brick making machine.    There was testimony given by
disinterested witnesses tending to show that Peter Thams
traded land for the patent right, which he denies, claim-
ing that he paid a money consideration.    A. R. Oleson

testified that in December, 1892, he met Peter Thams at
Aspen, Colorado, and conversed with him at the time the
deposition of the latter was taken in this case, but which
was not read on the trial, and that during the conversa-
tion Peter Thams stated that he did not know the said
John R. Armstrong and never had any dealings whatever
with him.   Much stress is laid by plaintiff upon the fact
that Peter Thams paid the taxes upon the land for sev-
eral years following the recording of the Armstrong deed.
It is unusual for a grantor to continue paying taxes upon
the property after he has parted with the title.   The only
explanation for his doing so in this case to be found in
the record is the fact that Thams soon became dissatis-
fied with his bargain for the patent right, and within a
month or two after he obtained it he went to Elkhart,
Indiana, and saw Mr. Armstrong for the purpose of hav-
ing the sale rescinded, but was unsuccessful in his at-
tempt.   The evidence to establish the execution of the
deed was as complete as could have been expected under
the circumstances.   It was made more than twenty
years before the trial, the original was lost or destroyed,
the grantee dead, and there was no subscribing witness.
A certificate of acknowledgment of a conveyance of land
in proper form is evidence of its execution and acknowl-
edgment, although not conclusive.   The certificate can
be impeached only by clear and convincing proof of its
falsity. (*Phillips v. Bishop*, 35 Neb., 487; *Barker v. Avery*,
36 Neb., 599.) In this case the certificate is corroborated
by the officer who made it.

It is argued that the certified transcript of the record
of the deed was not competent evidence of the execution
of the original until the existence and genuineness of the
deed itself is established, and authorities are cited to the
effect that to make a copy of a lost instrument admissi-
ble the existence and execution of the original as a genu-
ine document must be proved.   A sufficient answer to
this argument is that after plaintiff himself had placed
in evidence the copy of the recorded deed defendant

introduced sufficient evidence of the prior existence and genuineness of the original deed. With such proof, if not without it, under section 13, chapter 73, Compiled Statutes, the transcript of the record was competent evidence. That section authorizes the record of a deed duly recorded, or certified transcript of the same, to be read in evidence with like force and effect of the original deed whenever the original is shown to be lost, or not belonging to the party seeking to use the same, nor within his control. The evidence was sufficient to justify the finding of the court below, that the deed was executed by Peter Thams, the original patentee. The decree is

AFFIRMED.